**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| **JUNIOR VILLANUEVA,** |
| **Petitioner,** |
| **v.** |
| **SUPERINTENDENT CLARK, *et al.*,** |
| **Respondents.** |

**CIVIL ACTION NO. 17-610**

## MEMORANDUM OPINION

**Rufe, J.**                                                           **December 6, 2019**

Petitioner Junior Villanueva, who is proceeding *pro se*, seeks relief in this Court pursuant to 28 U.S.C. § 2254, arguing that his state-court conviction was imposed in violation of the United States Constitution. Petitioner seeks habeas relief based on claims of trial court error, ineffective assistance of counsel, and a *Brady* violation. The Petition was referred to an assigned Magistrate Judge who has issued a Report and Recommendation ("R&R") that the petition be denied. Petitioner has filed objections to the R&R. After careful, *de novo* review of the record, the Court determines that Petitioner has shown entitlement to relief on his claim based on the denial of his Sixth Amendment right to present witnesses in his defense.

### I.      BACKGROUND[1]

Villanueva, who is deaf and speaks only Spanish, was charged with numerous offenses involving the rape and sexual abuse of nine year old Ma. S., the daughter of his live-in girlfriend, Beysi Rivera.[2]

---

[1] The Background is taken from the R&R, the Habeas Petition, the Amended Habeas Petition, the Commonwealth's Answer and Supplemental Answer, Petitioner's Reply, the documents the parties have submitted, and the state court record.

[2] The Court will protect the privacy of all people who were minors at the time of the trial by not referring to them by name. Because the victim and her sister have the same initials, the Court will refer to the victim as Ma. S. and her sister as Me. S.

Beysi Rivera had two daughters, Ma. S. and Me. S., and a son, A.S.[3] Villanueva lived with Rivera for eight months from December 2007 to August 2008.[4] The charges against him alleged that, during this time, Villanueva would come into the room Ma. S. shared with Me. S., and sexually abuse Ma. S.[5]

Three days before trial began, the Commonwealth learned from Rivera of two witnesses who would be testifying on behalf of Villanueva.[6] The first was N.E., a child who had lived with Rivera and her children for six months in 2006, during which time she slept in the same bedroom as Ma. S. and Me. S.[7] The second was Yuizanet E., who was N.E.'s mother and had lived with Rivera and her children for two weeks in 2007.[8]

Three days into trial, the Commonwealth sought an *in camera* offer of proof regarding these two witnesses.[9] In his offer of proof, trial counsel explained that N.E. would testify that when she lived with the victim, N.E., Ma. S., and Me. S. were all sexually abused by A.S., and that the manner of that abuse was the same as that alleged against Petitioner.[10]

In response to the offer of proof, the Commonwealth revealed that when it learned of the proposed testimony from Rivera, it investigated the proposed testimony, which included checking the records of the Lehigh County Children and Youth Services ("CYS").[11] As part of

---

[3] Rivera also had another son who was not involved in these proceedings.

[4] Affidavit of Probable Cause, Docket Number CR60-09, Complaint/Incident Number BC-09-10301, March 3, 2010.

[5] *See id*.

[6] *Commonwealth v. Villanueva*, No. 2264 EDA 2011, slip op. at 3 (Pa. Super. Ct. June 11, 2012) ("Direct Appeal").

[7] Trial Transcript at 93–94, 97, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[8] *See id*. at 112–13. Because N.E. shares the same surname as her mother, to protect N.E.'s identity, the Court will only refer to N.E.'s mother as Yuizanet.

[9] *See id*. at 3.

[10] Trial Transcript at 29, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[11] Direct Appeal, slip op. at 4.

this investigation, the Commonwealth received a letter from CYS summarizing the information it had on file.[12] This letter confirmed that, several years earlier, a report had been made on behalf of N.E. which alleged that A.S. had inappropriately touched both her and Ma. S.[13] The Commonwealth received this letter on the same day as the offer of proof and turned it over to the defense that same day.[14]

During the *in camera* proceedings, the Commonwealth moved to exclude the testimony from N.E. and Yuizanet about sexual abuse by A.S., arguing that it was not relevant and would confuse the jury because N.E. and Yuizanet would only specifically testify about sexual abuse occurring before the charged conduct.[15] The defense explained that the evidence was relevant for four reasons. First, it allowed the defense to argue that A.S. had committed the charged conduct. Second, it provided a motive of protecting A.S. for Ma. S., Me. S., and Rivera to name Villanueva as the perpetrator. Third, it explained Ma. S.'s knowledge of the sexual conduct she recalled experiencing. Fourth, it explained the medical evidence that pointed to a possibility that Ma. S. had been sexually abused.[16] The trial court agreed with the Commonwealth that the evidence was not relevant and granted the Commonwealth's motion.[17]

Villanueva moved for a mistrial based upon an alleged *Brady* violation for the failure to turn over the CYS letter earlier.[18] Villanueva alternatively moved for a continuance to allow him

---

[12] *See id.* at 12–13.

[13] *See id.* at 4.

[14] *See id.* at 13.

[15] Trial Transcript at 8–10, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[16] *See id.* at 4–6.

[17] *See id.* at 13.

[18] Trial Transcript at 27, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

to receive the full file from CYS.[19] The trial court denied the motion for a mistrial or continuance ruling that the Commonwealth only learned of the existence of the allegations several days before trial so the disclosure was timely and that, in any event, the information was not exculpatory.[20]

Pursuant to Pennsylvania law, the trial court held a competency hearing where defense counsel argued that Ma. S. was not competent to testify due to the hallucinations that she experienced at the time of the charged conduct.[21] The trial court, however, ruled that Ma. S. was competent to testify because she "understood the difference between right and wrong . . . [and] could testify truthfully."[22]

At trial, Ma. S. named Villanueva as the perpetrator of sexual abuse against her.[23] Her sister Me. S. testified about conduct including that she once saw Villanueva lying naked in the bed the sisters shared while they were asleep.[24] Rivera also testified on behalf of the Commonwealth, and N.E. and Yuizanet testified on behalf of the defense,[25] but no evidence about sexual abuse by A.S. was introduced. Villanueva did not testify. At the close of trial, the jury returned a guilty verdict and Petitioner was sentenced to an aggregate term of incarceration of 46 to 92 years.

---

[19] *See id.*

[20] Direct Appeal, slip op. at 12–13.

[21] Trial Transcript at 27, Day I, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 13, 2010).

[22] *See id.* at 35.

[23] Trial Transcript at 31–35, Day II, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 14, 2010).

[24] *See id.* at 87.

[25] N.E. testified that she lived with Rivera and her children for six months in 2006 during which time she witnessed Rivera frequently hitting the sisters. *See* Trial Transcript at 91–104, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010). Yuizanet testified that she lived with Rivera and her children for two weeks in 2007 during which time she saw Rivera frequently hit both Villanueva and the sisters and thought that Villanueva acted normally with the sisters. *See id.* at 110–125.

On direct appeal, Petitioner challenged the trial court's ruling excluding testimony about A.S.'s alleged sexual abuse and denying the *Brady* claim. Without a response from the Commonwealth, the Superior Court *sua sponte* analyzed the first issue under Pennsylvania's Rape Shield Law and affirmed the exclusion of the evidence.[26] The Superior Court also ruled that there was no *Brady* violation because the information was timely turned over and that it was "neither exculpatory nor admissible under the Rape Shield Law."[27] The Pennsylvania Supreme Court denied Villanueva's petition for allowance of appeal.[28]

Petitioner then filed a timely *pro se* Post Conviction Relief Act ("PCRA") petition.[29] Counsel was appointed, filed an amended petition, and represented Petitioner at an evidentiary hearing.[30] Relevant to this § 2254 proceeding, Petitioner alleged that: 1) his trial counsel was ineffective for failing to request that the trial court order Ma. S. to undergo a psychiatric evaluation; 2) his appellate counsel (who was also trial counsel) was ineffective for failing to appeal the trial court's finding that the victim was competent to testify; and 3) trial counsel was ineffective for failing to properly advise Petitioner about testifying at trial.[31] The trial court denied Petitioner's PCRA petition and the Superior Court affirmed.[32] The Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal.[33]

---

[26] *See* Direct Appeal, slip op. at 6–11.

[27] *Id.* at 13.

[28] *Commonwealth v. Villanueva*, 528 MAL 2012 (Pa. April 17, 2013).

[29] *Commonwealth v. Villanueva*, 85 EDA 2016, slip op. at 2 (Pa. Super. Ct. Aug. 19, 2016) ("PCRA Appeal").

[30] *See id.*

[31] Brief of Appellant, *Commonwealth v. Villanueva*, 85 EDA 2016, at 4–5.

[32] PCRA Appeal, slip op. at 12.

[33] *Commonwealth v. Villanueva*, 654 MAL 2016 (Pa. Dec. 28, 2016).

On February 5, 2017, Petitioner filed a timely petition for writ of habeas corpus under 28 U.S.C. § 2254 with this Court.[34] The Court granted Petitioner leave to file an amended petition.[35] Petitioner raised the following five claims: (1) appellate counsel was ineffective for failing to challenge the trial court's determination that Ma. S. was competent to testify; (2) trial counsel was ineffective for failing to request that the trial court order a psychiatric evaluation of Ma. S.; (3) the trial court erred in excluding evidence that A.S. had sexually abused Ma. S. in the same manner that Petitioner was alleged to have abused her; (4) the trial court failed to recognize a *Brady* violation based upon the letter the Commonwealth provided to Petitioner three days into his trial; and (5) trial counsel was ineffective for providing unreasonable and illogical advice to Petitioner which dissuaded him from testifying.[36]

The Commonwealth contended that Petitioner was not entitled to relief on any of his claims.[37] With regard to claims one, two, four, and five, the Commonwealth argued that the state court's conclusions were reasonable and were not contrary to federal law.[38] With regard to claim three, the Commonwealth argued that Petitioner failed to exhaust the claim and, alternatively, that the Superior Court's ruling excluding testimony pursuant to the Rape Shield Law was not contrary to or an unreasonable application of federal law.[39]

---

[34] *See* Doc. No. 1. The Commonwealth concedes that the Petition was timely. *See* Answer and Memorandum of Law of Respondent District Attorney of Northampton County [Doc. No. 6] at 3 n.2.

[35] *See* Doc. No. 7.

[36] *See* Amended Petition [Doc. No. 10] at 8, 10, 12, 13, 16.

[37] *See* Answer and Memorandum of Law of Respondent District Attorney of Northampton County [Doc. No. 6] at 4.

[38] *See id.* at 15.

[39] *See id.*

The R&R agreed that claim three was unexhausted and procedurally defaulted and that Petitioner's other claims were resolved reasonably by the state court.[40] Therefore, the R&R recommended that Petitioner's claims be denied without an evidentiary hearing.[41]

Petitioner timely filed objections to the R&R.[42] With regard to claim three, Petitioner asserts that the claim was exhausted since he "indisputably argued to the Superior Court that the Trial Court violated his constitutional right to present evidence in the form of a witness."[43] With regard to claims one, two, four, and five, Petitioner argues that "the Superior Court's adjudication derived from an unreasonable application of federal law."[44]

## II.   DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[45] Where, as here, the petition is referred to a magistrate judge for a report and recommendation, a district court shall conduct a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[46]

---

[40] *See* Doc. No. 16 at 16.

[41] *See id.*

[42] *See* Doc. No 22.

[43] Doc. No. 21 at 5.

[44] *Id.* at 61.

[45] 28 U.S.C. § 2254.

[46] 28 U.S.C. § 636(b)(1).

Pursuant to AEDPA, if a claim was reviewed and rejected on the merits by the state courts, habeas relief is precluded unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings."[47]

A state court's decision is contrary to clearly established federal law if the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."[48] A decision is an unreasonable application of clearly established law where the state court "identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case."[49]

If a claim was not adjudicated on the merits in state court, the Court "reviews legal questions and mixed questions of law and fact *de novo*."[50] However, "the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence."[51]

---

[47] 28 U.S.C. § 2254(d).

[48] *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

[49] *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires more than an incorrect or erroneous state court decision. *Id.* Instead, the application of clearly established law must be "objectively unreasonable." *Id.*

[50] *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 282 (3d Cir. 2018) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)).

[51] *Id.* (citations omitted).

**A. Whether Appellate Counsel Was Ineffective for Failing to Challenge the Trial Court's Determination that the Victim Was Competent to Testify**

In his first claim, Villanueva asserts that his appellate counsel was ineffective for failing to appeal the trial court's finding that Ma. S. was competent to testify.[52] Whether a witness is competent to testify is a matter of state law.[53] In *Rosche v. McCoy*, the Pennsylvania Supreme Court set forth the standard for determining whether a child is competent to testify.[54]

The R&R explained that, in Petitioner's PCRA proceedings, the Superior Court held that the trial court's competency determination was adequately supported by the record and, therefore, counsel was not ineffective for omitting the meritless claim.[55] Accordingly, the R&R explained that the federal habeas court is bound to accept as reasonable the state court's determination that, under Pennsylvania law, Ma. S. was competent to testify.[56] The R&R further concluded that since the federal habeas court is bound by the state court's ruling that Ma. S. was competent, the federal habeas court cannot rule that counsel was ineffective for failing to raise the meritless claim on direct review.[57]

---

[52] *See* Amended Petition [Doc. No. 10] at 35.

[53] *Cf. Kentucky v. Stincer*, 482 U.S. 730, 742 (1987) (explaining that states differ on procedures for determining whether a witness is competent to testify); *see also Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law issue."); *York v. O'Llio*, No. 13-7609, 2016 WL 5938700, at *11 (D.N.J. Oct. 11, 2016) (citations omitted) ("[B]ecause a state's evidence rules generally govern the admission of evidence or testimony in a given state criminal trial, an allegedly erroneous evidentiary ruling by a state court is insufficient to warrant habeas relief unless the error in question rose to the level of a Due Process violation."); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (explaining that "the Supreme Court has not set forth a definition of witness competence required by the Due Process Clause[.]").

[54] 156 A.2d 307, 310 (1959). Pursuant to *Rosche*, the trial court must determine whether the child has: "(1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth." *Id.*

[55] *See* Doc. No. 16 at 9.

[56] *See id.* at 10 (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)).

[57] *See id.*

In his objections, Petitioner concedes that "the court's ruling is not contrary to federal law since the state court employed the test found in *Rosche*" but argues that the "state court decision was an unreasonable determination of the facts regarding the standard in *Rosche*."[58]

However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[59] The state court held that the trial court properly applied *Rosche* and determined that Ma. S. was competent. Petitioner "thus cannot prevail by asking [the Court] to second-guess the Pennsylvania courts' state law determinations."[60] Because the Superior Court determined in the PCRA proceedings that Ma. S. was competent, any failure to raise the issue on direct appeal did not prejudice Petitioner.[61]

### B. Whether Trial Counsel Was Ineffective for Failing to Request that the Trial Court Order a Psychiatric Evaluation of the Victim

Petitioner's second claim is that trial counsel rendered ineffective assistance when he failed to request an independent psychiatric evaluation of Ma. S. to assist in the determination of her competence to testify.[62] Whether a court may order a psychiatric evaluation is also a matter of state law.[63] Under Pennsylvania law, a court may only order a psychiatric evaluation if the record demonstrates a "compelling reason" to do so.[64]

---

[58] Petitioner's Objections [Doc. No. 23] at 23.

[59] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

[60] *Carnevale v. Superintendent Albion Sci*, 654 F. App'x 542, 547 (3d Cir. 2016).

[61] *See Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).

[62] *See* Amended Petition [Doc. No. 10] at 53.

[63] *Commonwealth. v. Alston*, 864 A.2d 539, 549 (Pa. 2004).

[64] *Commonwealth. v. Shearer*, 894 A.2d 793, 795 (Pa. 2006).

The R&R explained that, in Petitioner's PCRA proceedings, the Superior Court "found no record evidence to establish that [Ma. S.] suffered from a mental condition that would permit a psychiatric evaluation."[65] Therefore, the Superior Court held that counsel was not ineffective for failing to request a psychiatric evaluation because such a request would have been meritless.[66] As with claim one, the R&R explained that the federal habeas court is bound to accept the Superior Court's conclusion on this state law issue.[67]

Petitioner objects to the R&R with arguments detailing Ma. S.'s incompetence to testify, including her hallucinations, and by asserting that trial counsel had no strategic reason not to request an evaluation.[68] However, the Court is bound by the state court's ruling that, pursuant to state law, any request for a psychiatric evaluation would have been meritless. Because this Court cannot "reexamine state-court determinations on state-law questions," Petitioner's argument fails, since trial counsel could not have been ineffective for failing to raise a meritless claim.[69]

### C.  Whether the Commonwealth Violated Its *Brady* Obligations

Petitioner also claims that the Commonwealth committed a *Brady* violation by failing to promptly disclose to him the letter CYS sent to the Commonwealth which indicated that CYS had investigated allegations that N.E. and Ma. S. had both been sexually abused by A.S.[70] The

---

[65] Doc. No. 16 at 10.

[66] *See id.* at 10–11.

[67] *See id.* at 11.

[68] Petitioner's Objections [Doc. No. 23] at 54–55.

[69] *Estelle*, 502 U.S. at 67–68.

[70] *See* Amended Petition [Doc. No. 10] at 21.

trial court denied Petitioner's motion for a mistrial and, alternatively, for a continuance.[71] On direct appeal, the Superior Court denied the claim as well.[72]

The R&R explained that the "chronology concerning the CYS letter reveals that it was timely disclosed."[73] The Commonwealth learned about N.E. and Yuizanet's intended testimony on September 10, 2010.[74] The Commonwealth then contacted CYS as part of its investigation into the proposed testimony.[75] A CYS employee drafted the letter on September 10 and it was received by the Commonwealth on September 15, 2010.[76] That same day, the Commonwealth disclosed the letter to Petitioner.[77] Therefore, the R&R found that the Commonwealth did not violate its *Brady* obligations.[78]

In his objections, Petitioner concedes that the Commonwealth did timely provide the CYS letter to defense counsel, but asserts that the remainder of the CYS file also constituted *Brady* material and the trial court did not grant a continuance or mistrial to allow him to receive a copy of the file.[79]

The elements of a *Brady* claim are: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

---

[71] Trial Transcript at 12–13, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[72] *See* Direct Appeal, slip op. at 14.

[73] Doc. No. 16 at 15.

[74] *See* Direct Appeal, slip op. at 3.

[75] *See id.* at 4.

[76] *See id.*

[77] *See id.* at 13.

[78] Doc. No. 16 at 15. The R&R also ruled that, even assuming that the Commonwealth's disclosure was untimely, there was no *Brady* violation because the "salient information . . . was already known to the defense." *Id.* Because the Court agrees that the disclosure was timely, the Court will not decide whether, had the evidence not been disclosed, it would have been a *Brady* violation.

[79] *See* Petitioner's Objections [Doc. No. 23] at 19.

ensued."[80] Petitioner claims that the file would have shown that A.S. had been investigated "by CYS for sexual assaults on both the victim in this case and Villanueva's intended witnesses."[81] This information, though, was contained in the letter CYS provided to the Commonwealth that was timely turned over to the defense.[82] Therefore, Villanueva fails to show prejudice from the failure to have received the entire CYS file.

### D. Whether Trial Counsel Was Ineffective for Advising Petitioner not to Testify

Petitioner also claims that trial counsel's advice concerning the reasons he should not testify was so deficient that Petitioner failed to knowingly and intelligently waive his right to testify.[83] Petitioner asserts that his trial counsel advised him not to testify for two specific reasons:

> First, trial counsel testified [at the PCRA hearing] that because the Commonwealth presented the testimony of the criminal investigator – which included Villanueva's denial of the crimes – trial counsel felt that it was sufficient that the jury heard indirectly that Villanueva denied the accusations. Second, the fact that Villanueva does not speak English and is deaf is a "very good reason" for him not to take the stand to defend himself.[84]

The Superior Court denied Petitioner's claim because "[t]here is nothing to suggest that counsel in any way interfered with [Petitioner's] right to testify or that he gave any specific advice that would be unreasonable."[85] Moreover, the Superior Court explained that "ultimately it was Villanueva who made the decision against testifying."[86]

---

[80] *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

[81] Petitioner's Objections [Doc. No. 23] at 20.

[82] *See* Direct Appeal, slip op. at 4.

[83] *See* Amended Petition [Doc. No. 10] at 65–70.

[84] *Id.* at 66. Petitioner asserts that trial counsel testified about these two reasons at the PCRA hearing. *See id.* The transcripts from the PCRA hearing are not part of the record available to this Court.

[85] PCRA Appeal, slip op. at 12.

[86] *Id.*

The R&R determined that because Petitioner made the decision to not testify, his constitutional rights were not violated.[87] In his objections, Petitioner repeats the same arguments that his counsel's advice interfered with his ability to make a knowing and intelligent decision not to testify.[88]

Claims for ineffectiveness of counsel are governed by *Strickland v. Washington*.[89] Under *Strickland*, counsel is presumed effective and a petitioner must establish that: (1) his attorney's performance was "unreasonable under prevailing professional norms and that the challenged action was not sound strategy,"[90] and (2) there is a reasonable possibility that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."[91]

The accused's right to testify at his trial is guaranteed by several provisions of the Constitution.[92] The decision whether or not to testify at trial is solely for the defendant to make.[93] Therefore, when an attorney "merely advises" a defendant not to testify, "that tactical decision" does not fall "below *Strickland*'s standard of objective reasonableness."[94]

Contrary to Petitioner's argument, there is nothing in the record to indicate that Petitioner's "attorney did not simply advise him not to testify but led him to believe that he could not do so."[95] Especially when viewed through the lens of the "highly deferential" §2254(d) standard, the Court cannot find that it was objectively unreasonable for the state court to rule that

---

[87] *See* Doc. No. 16 at 12.

[88] *See* Petitioner's Objections [Doc. No. 23] at 55.

[89] *See* 466 U.S. 668 (1984).

[90] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 688–89).

[91] *Strickland*, 466 U.S. at 694.

[92] *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987).

[93] *Id.* at 51, 53; *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

[94] *Frederick v. Kyler*, 100 F. App'x 872, 874 (3d Cir. 2004).

[95] *Id.*

it was Petitioner's decision not to testify.[96] Therefore, under the AEDPA standard, the Court rules that Petitioner's claim has no merit.

### E. Whether the Exclusion of Evidence Violated Petitioner's Constitutional Rights

#### 1. Whether Villanueva Exhausted his Sixth Amendment Claim

Petitioner asserts that the trial court's exclusion of testimony about A.S.'s alleged sexual abuse violated his constitutional rights.[97] As a threshold matter, the Court must determine whether Petitioner exhausted his state court remedies as to this issue.[98]

##### a. Legal Standard

Exhaustion requires that the federal claim must have been "fairly presented" to the state courts.[99] The exhaustion requirement "ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights."[100] "In Pennsylvania, a defendant 'exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a

---

[96] *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

[97] In his federal habeas claim, Petitioner at times styles his claim as a "Fourteenth Amendment due process violation" arguing that "the trial court violated his constitutional right to present evidence in the form of a witness" and at times as "inconsistent with constitutional guarantees of cross-examination, confrontation, and due process." Petitioner's Reply Brief [Doc. No. 15] at 6–7. This is a distinction without a difference since "[t]he right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Savage v. Dist. Attorney of Cty. of Philadelphia*, 116 F. App'x 332, 338 (3d Cir. 2004). Therefore, whether Petitioner's claim is brought pursuant to the Fourteenth Amendment, Sixth Amendment, or both, the Court will review Petitioner's claim under Sixth Amendment doctrine since "[t]here is apparently little, if any, difference in the analysis." *Id.* at 338 n. 5 (quoting *Government of Virgin Islands v. Mills*, 956 F.2d 443, 445 n. 4 (3d Cir.1992)); *see also Taylor v. Illinois*, 484 U.S. 400, 419 (1988) (Brennan, J., dissenting) (explaining that the Court implicitly concluded that the petitioner's Sixth Amendment claim was "sufficiently well presented to the state courts to support our jurisdiction . . . because the analysis in this case would essentially be the same under the Due Process Clause.").

[98] 28 U.S.C. § 2254(b)(1)(A); *see also Ex parte Royall*, 117 U.S. 241 (1886).

[99] *Evans v. Court of Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

[100] *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citations omitted).

petition for collateral relief under the PCRA.'"[101] A defendant who raises the claim on direct appeal is not required to seek *allocatur* from the Pennsylvania Supreme Court in order to exhaust state remedies.[102] Therefore, as long as Petitioner fairly presented his constitutional claim on direct appeal, he may pursue federal court review.

A claim "need not have cited 'book and verse' of the federal constitution" to be considered to have fairly presented the federal claim.[103] In fact, "the absence of explicit reference to federal law does not resolve the issue of whether a federal claim was fairly presented."[104] Instead, to fairly present a claim a "petitioner[] must have communicated to the state courts in some way that [he was] asserting a claim predicated on federal law."[105]

Even "without specifically referencing the federal Constitution or a federal statute," a habeas petitioner can convey "the required message . . . through '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'"[106]

b. <u>Analysis</u>

The R&R determined that "when Petitioner challenged the trial court's decision on direct appeal, he did not mention due process, nor rely upon any of the U.S. Supreme Court's relevant

---

[101] *Bennett*, 886 F.3d at 280 (quoting *Wilkerson v. Superintendent*, 871 F.3d 221, 228–29 (3d Cir. 2017)).

[102] *See Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004).

[103] *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (quoting *Picard*, 404 U.S. at 278).

[104] *Id.*

[105] *Id.* (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

[106] *Id.* (quoting *Evans*, 959 F.2d at 1232).

due process cases. Instead, he relied solely upon state law."[107] Therefore, the R&R concluded that Petitioner failed to exhaust his federal claim.[108]

However, although the argument was not fully developed, Petitioner's brief on direct appeal specifically stated that the trial court "committed an abuse of discretion, and violated the Defendant's rights under the compulsory process and confrontation clause of the Sixth Amendment"[109]—a "book and verse" citation to the federal Constitution.[110] The R&R appears to have overlooked Petitioner's Summary of Argument which included this invocation of Petitioner's constitutional rights.[111]

In a non-precedential but persuasive opinion by Judge Chagares, the Third Circuit in *Allison v. Superintendent Waymart SCI* explained that a petitioner "fairly presented the legal theory of a federal constitutional violation when his direct appeal contained references to the 'United States Constitution' and 'the Fourteenth Amendment of the United States Constitution,' and quoted the language of the amendment."[112]

The Third Circuit distinguished the petitioner's invocation of federal law in *Allison* from that in *Keller v. Larkins*, where the Third Circuit held that a petitioner who made only "passing references to the concept of a 'fair trial' in his state court papers" did not put the state court on

---

[107] Doc. No. 16 at 5 (citing *Commonwealth v. Villanueva*, No. 2264 EDA 2011, Brief of Appellant, at 12–18 ("Petitioner's Direct Appeal Brief")).

[108] *See id.*

[109] Petitioner's Direct Appeal Brief at 10. This echoed counsel's argument at trial that "under the compulsory process and confrontation clause[s] under the Sixth Amendment" the evidence should be admitted, but the trial court's ruling was limited to relevancy. Trial Transcript at 4, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[110] *McCandless*, 172 F.3d at 261.

[111] The R&R specifically cited to pages 12–18 of Petitioner's direct appeal brief when it concluded that Petitioner failed to present his federal claim. However, it is on page 10 of Petitioner's direct appeal brief where Petitioner invoked the Sixth Amendment in his Summary of Argument.

[112] 703 F. App'x 91, 95 (3d Cir. 2017) (cleaned up).

notice of a constitutional claim.[113] By contrast, the Third Circuit in *Allison* ruled that "[a]lthough [Petitioner's] discussion of his federal constitutional claim was short, and he did not cite any federal case law, he invoked the federal law when he cited the Fourteenth Amendment and linked the alleged . . . facts of his claim to it."[114]

Villanueva's direct appeal brief was strikingly similar to that of the petitioner in *Allison*. As in *Allison*, Villanueva did not cite any federal case law.[115] But also like the petitioner in *Allison*, Villanueva cited to a specific constitutional amendment and linked the alleged facts of his claim—that the trial court excluded eyewitness testimony indicating that the victim's brother could have been the perpetrator—to his invocation of the Sixth Amendment's Compulsory Process Clause.[116] This not a case where the petitioner made "passing references to the concept of a 'fair trial' in his state court papers."[117] Rather, the state court was explicitly "alerted to the

---

[113] *Id.* (quoting *Keller v. Larkins*, 251 F.3d 408, 414 (3d Cir. 2001)).

[114] *Id.* (citing *Picard*, 404 U.S. at 278).

[115] *See id.*

[116] Within this claim, Villanueva asserts his rights under both the Compulsory Process and Confrontation Clauses. Whether Villanueva communicated to the state courts that he was invoking his rights under the Confrontation Clause is a closer call. A "primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). On the one hand, Villanueva explicitly referenced the Confrontation Clause in his direct appeal brief. However, Villanueva linked no explicit facts to this claim. All of the facts in the brief were about the trial court's denial of his right to present witnesses. Although the trial court's order did deny trial counsel the right to cross-examine the victim about the alleged sexual abuse by A.S., *see* Trial Transcript at 49, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010), outside of the reference to the Confrontation Clause, the brief contained nothing else related to this claim. Because the Court grants relief based on the violation of Villanueva's compulsory process rights which, based on Third Circuit precedent, Villanueva fairly presented to the state courts, the Court need not decide whether Villanueva also fairly presented his Confrontation Clause claim to the state courts.

[117] *Compare Keller*, 251 F.3d at 415 (holding that a "passing reference to the concept of a 'fair trial'" was not enough to exhaust the claim), *with Allison*, 703 F. App'x at 94 (holding that explicitly mentioning the Constitution and linking the alleged facts of his claim to the invocation of the Constitution was enough to exhaust the claim), *and McCandless*, 172 F.3d at 262 (explaining that a claim was not exhausted because "[n]owhere are the terms 'constitution,' 'due process' or even 'fair trial' mentioned.").

fact that [Petitioner was] asserting claims under the United States Constitution."[118] Accordingly, Petitioner fairly presented his federal compulsory process claim to the state courts.

In addition to explicitly citing the Sixth Amendment, Petitioner asserted "a pattern of facts that is well within the mainstream of constitutional litigation."[119] The Sixth Amendment provides the accused in a criminal prosecution the right "to have compulsory process for obtaining witnesses in his favor[.]"[120] The Supreme Court has explained, based on this right, that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."[121]

The gravamen of Petitioner's claim was that the Court excluded "eyewitness testimony that the witness and alleged victim and sister were sexually abused by the alleged victim's brother, close in time to the allegations against the Defendant and according to the same modus operandi."[122] This "pattern of facts"—refusing to allow the defendant to present a witness in his defense—"is well within the mainstream of constitutional litigation."[123]

This is not a case where "the defendant failed to invoke any constitutional provision or case law whatsoever."[124] "Here, [Petitioner] not only alleged a factual pattern well within the mainstream of [Compulsory Process] Clause litigation, he also specifically invoked the

---

[118] *Duncan*, 513 U.S. at 365–66.

[119] *McCandless*, 172 F.3d at 261 (citing *Evans*, 959 F.2d at 1232).

[120] U.S. Const. Amend. VI.

[121] *Taylor*, 484 U.S. at 408.

[122] Petitioner's Direct Appeal Brief at 10.

[123] *McCandless*, 172 F.3d at 261 (citing *Evans*, 959 F.2d at 1232); *see also McDaniels v. Winstead*, No. 11-5679, 2014 WL 2957460, at *5 (E.D. Pa. July 1, 2014), *aff'd sub nom. McDaniels v. Warden Cambridge Springs SCI*, 700 F. App'x 119 (3d Cir. 2017) (citing *Bisaccia v. Attorney Gen.* 623 F.2d 307, 311 (3d Cir. 1980)) ("[A] due process violation was fairly presented to the state courts-even though the petitioner did not cite the federal Constitution-when a dissent in the Supreme Court of New Jersey described the trial as 'patently unfair[]' . . . [because] this statement that the trial was 'patently unfair' is a description similar to the traditional characterizations used to assess purported Fourteenth Amendment due process violations.").

[124] *Minett v. Hendricks*, 135 F. App'x 547, 552 (3d Cir. 2005).

[Compulsory Process] Clause."[125] Petitioner's brief "was more than sufficient to put the state court on notice" of his constitutional claim.[126] Therefore, the Court holds that Petitioner fairly presented his claim to the state courts.

### 2. Whether the State Court Adjudicated Villanueva's Compulsory Process Claim on the Merits

#### a. Legal Standard

Under AEDPA, the Court must give deference to the state court's denial of Villanueva's claim if the state court's decision was based on the merits of the constitutional claim. If the state court's decision was not based on the merits of the constitutional claim, however, then the Court reviews the claim *de novo*. "A judgment is 'on the merits' only if it was 'delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments.'"[127] "On the merits" means that the state court reviewed the "intrinsic rights and wrongs" of the matter.[128]

The Supreme Court in *Johnson v. Williams* explained that when a state court issues an opinion ruling against the defendant and addresses some of the issues but is "silent as to the reasons for denying the federal claim" there is a presumption "that the federal claim was adjudicated on the merits."[129] The presumption is applied because state courts have "very heavy" caseloads and, accordingly, their opinions tend to "get to the heart of cases presented and dispose of them expeditiously."[130] Therefore, "it is by no means uncommon for a state court to fail to address separately a federal claim that the court has not simply overlooked."[131]

---

[125] *Rainey v. Sec'y Pa. Dep't of Corrs.*, 658 F. App'x 142, 150 (3d Cir. 2016).

[126] *Id.*

[127] *Bennett*, 886 F.3d at 282 (quoting *Johnson v. Williams*, 568 U.S. 289, 302 (2013)).

[128] *Id.* (quoting *Williams*, 568 U.S. at 302).

[129] *Id.* (citing *Williams*, 568 U.S. at 293); *see also Richter*, 562 U.S. at 99.

[130] *Williams*, 568 U.S. at 298–300.

[131] *Id.* at 300.

This so-called *Williams* presumption is rebuttable.[132] It applies only "in the absence of any indication or state-law procedural principles to the contrary."[133] "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[134]

As the Court of Appeals has explained, "*Williams* set forth a non-exhaustive list of 'other explanation[s] for the state court's decision' sufficient to rebut the presumption that a federal claim was adjudicated on the merits."[135] "They include the following: A state court may have inadvertently overlooked the federal claim. A state court may have applied a state standard that is in at least some circumstances less protective or quite different from the federal standard. It may have disregarded the federal claim based upon a belief—correct or not—that the federal claim was not fairly presented."[136] "Where the *Williams* presumption is rebutted for one of these, or any other reason, review of the claim is *de novo*,"[137] rather than the "highly deferential" standard created by AEDPA.[138]

b. <u>Analysis</u>

The state appellate court quoted Villanueva's "Statement of Questions Involved"[139] and found, in relevant part, that Villanueva's issue on appeal was: "Whether the trial court committed an abuse of discretion, by finding irrelevant, eyewitness testimony that the victim's brother

---

[132] *See Bennett*, 886 F.3d at 282 (quoting *Williams*, 568 U.S. at 298).

[133] *Williams*, 568 U.S. at 298 (quoting *Richter*, 562 U.S. at 99).

[134] *Richter*, 562 U.S. at 99–100.

[135] *Bennett*, 886 F.3d at 282–83 (quoting *Richter*, 562 U.S. at 100).

[136] *Id.* (citations and internal quotations omitted)

[137] *Id*.

[138] *Richter*, 562 U.S. at 105.

[139] Not the "Summary of the Argument," which is where Villanueva invoked the Sixth Amendment.

committed sexual abuse against the victim and witness in the same modus operandi, close in time to the alleged abuse by [Villanueva]?"[140] The appellate court then explained that "[w]e review the admission/exclusion" of "testimony from the minor-witness and her mother regarding allegations of previous sexual abuse endured by the victim . . . within the confines of Pennsylvania's Rape Shield Law."[141]

The appellate court did not stray from these confines. Despite Villanueva's invocation of his Sixth Amendment rights, there is no mention of that Amendment, or, for that matter, any federal law whatsoever. After ruling that none of the exceptions to Pennsylvania's Rape Shield Law applied, the court denied Villanueva's claim without further discussion.[142]

Applying the *Williams* presumption to the appellate court's denial of Villanueva's claim, the question becomes whether Villanueva has "rebutted the presumption that his federal claim was adjudicated on the merits."[143] He has. "[T]he evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in state court."[144]

The Third Circuit has explained that when an "examination of the opinions of the state courts shows that they misunderstood the nature of a properly exhausted claim . . . the deferential standards of review in AEDPA do not apply."[145] On direct review, the Superior Court expressly framed the issue as one of state law and confined its analysis to the state rape shield law without

---

[140] Direct Appeal, slip op. at 5 (quoting Petitioner's Direct Appeal Brief at 7).

[141] *Id.* at 6.

[142] *See id.* at 6–11.

[143] *Bennett*, 886 F.3d at 284.

[144] *Id.* (quoting *Williams*, 568 U.S. at 303).

[145] *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002); *see also Williams*, 568 U.S. at 303 n.4 (citing *Chadwick v. Janecka* approvingly for the proposition that state prisoners are entitled to overcome the presumption that a state court decision was on the merits by arguing that the state court inadvertently overlooked the federal claim); *Velazquez v. Superintendent Fayette SCI*, 937 F.3d 151, 160 (3d Cir. 2019); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001) (applying *de novo* review when the Pennsylvania Supreme Court never considered petitioner's constructive denial of counsel claim, and instead treated the claim as one of ineffective assistance of counsel).

any consideration of the Sixth Amendment.[146] Nothing in the opinion suggests that the Superior Court ever considered the Sixth Amendment implications when an accused's right to present witnesses is denied.[147] Thus, the Superior Court "'misunderstood the nature' of [Villanueva's] claim, and failed to adjudicate it on the merits."[148]

"There appears to be no sound rationale" for the state court's silence on Petitioner's Sixth Amendment claim.[149] Considering the "importance of the federal right at issue," the Court can only conclude that, like the R&R, the Pennsylvania court inadvertently overlooked that Villanueva was invoking the Sixth Amendment in his "Summary of the Argument."[150] The Commonwealth's failure to file a brief in response to Petitioner's direct appeal increases the likelihood that the Superior Court overlooked the Sixth Amendment claim.[151] Therefore,

---

[146] *Cf. Bennett*, 886 F.3d at 283–84 (ruling that the Pennsylvania Supreme Court made clear that it overlooked the federal issue by limiting its review to the state issue that the petitioner had raised).

[147] As will be discussed below, the Supreme Court has required that state courts respect the Sixth Amendment right to compulsory process, which can only be limited when a state court complies with the Sixth Amendment's requirements. *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967).

[148] *Velazquez*, 937 F.3d at 160 (quoting *Chadwick*, 312 F.3d at 606).

[149] *Brown v. Romanowski*, 845 F.3d 703, 711 (6th Cir. 2017). Additionally, the Supreme Court has identified three specific situations where it is likely that a state court did not overlook the federal claim even though the court failed to discuss the claim. *See Williams*, 568 U.S. at 298–300. This Court's conclusion that the state court overlooked the federal claim is bolstered by the lack of applicability of these three situations to this case. First, this is not a "circumstance[] in which a line of state precedent is viewed as fully incorporating a related federal constitutional right" such that the state court "may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right" since the state rape shield law does not incorporate the federal compulsory process right that Villanueva raised. *See id.* Second, because Villanueva's federal claim was explicitly raised in the opening sentence of the "Summary of Argument" and was connected to the facts supporting the claim, it was not a "fleeting reference . . . in a footnote or . . . buried in a string cite." *Id.*; *see also Bowers v. Wenerowicz*, No. 13-05550, 2016 WL 9306253, at *34 (E.D. Pa. Sept. 30, 2016). Third, the state court evidently did not consider the issue of the exclusion of testimony "as too insubstantial to merit discussion" because the court did, in fact, discuss the issue—the state court, however, "misunderstood the nature" of Villanueva's claim by viewing the claim only through the lens of the state rape shield law and inadvertently overlooking the Sixth Amendment claim. *Velazquez*, 937 F.3d at 160; *see also Chadwick*, 312 F.3d at 606; *Appel*, 250 F.3d at 210.

[150] *Romanowski*, 845 F.3d at 711.

[151] Direct Appeal, slip op. at 2 n.9 ("We note that the Commonwealth failed to file a brief in opposition to appeal. Although we believe that a brief from the Commonwealth would have been helpful, we nevertheless, are able to render the within memorandum decision based upon the certified record before us.").

Villanueva is entitled "to an unencumbered opportunity to make his case before a federal judge."[152]

### 3. Whether Villanueva's Constitutional Rights Were Violated

The Framers of the Constitution recognized that "[w]hen society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps."[153] The right to compulsory process was included in the Bill of Rights in reaction to the pre-1701 English "common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all."[154] To create "a government of laws, not of men,"[155] the Framers "felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury.[156]

The Compulsory Process Clause "protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling from the trial judge."[157] This right to compulsory process, in conjunction with the Due Process Clause, has been recognized to confer a right to a "meaningful opportunity to present a complete defense."[158] "The right to offer the

---

[152] *Williams*, 568 U.S. at 303.

[153] *Douglas v. People of State of Cal.*, 372 U.S. 353, 357 n. 2 (1963) (quoting *Coppedge v. United States*, 369 U.S. 438, 449 (1962)).

[154] *Washington*, 388 U.S. at 19 (citing 3 Story, Commentaries on the Constitution of the United States ss 1786—1788 (1st ed. 1833)).

[155] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J., concurring).

[156] *Washington*, 388 U.S. at 19.

[157] *Savage*, 116 F. App'x at 339 (citing *Mills*, 956 F.2d at 445).

[158] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Miller v. Warden, SCI Pine Grove,* No. CIV.A. 13-4014, 2015 WL 4722609, at *9 (E.D. Pa. Aug. 10, 2015).

testimony of witnesses . . . is in plain terms the right to present a defense."[159] Therefore, "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."[160]

Although Chief Justice Marshall deemed the right to compulsory process as "sacred,"[161] the Supreme Court has recognized that this right is "subject to reasonable restrictions."[162] A defendant's interest in presenting evidence may thus "bow to accommodate other legitimate interests in the criminal trial process."[163] Therefore, so long as rules restricting a defendant's ability to present evidence are not "arbitrary" or "disproportionate to the purposes they are designed to serve" they "do not abridge an accused's right to present a defense."[164] Moreover, the Supreme Court has explained that it has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."[165]

---

[159] *Taylor*, 484 U.S. at 409 (quoting *Washington*, 388 U.S. at 19).

[160] *Id.* (quoting *Washington*, 388 U.S. at 19).

[161] *United States v. Burr*, 25 F.Cas. 30, 33 (C.C.D.Va. 1807).

[162] *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

[163] *Id.* (quoting *Rock*, 483 U.S. at 55).

[164] *Id.*

[165] *Id.* (citing *Rock*, 483 U.S. at 58). Because the Supreme Court has set forth governing law on this issue, even had the state court adjudicated Petitioner's Sixth Amendment claim on the merits, it is likely that AEDPA would not preclude relief because "a state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). Supreme Court precedent mandates that the constitutional right to present witnesses means that a rape shield law cannot be used to exclude evidence if, in light of the facts in a particular case, it is "arbitrary or disproportionate" to the purpose of the law. *Michigan v. Lucas*, 500 U.S. 145, 151 (1991). Here, the state court applied a rape shield law but did not include the element—whether, in this case, applying the law would be disproportionate or arbitrary to the purpose of the law—that the Supreme Court requires. *Cf. Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 280–81 (3d Cir. 2016) ("Interpreting Supreme Court precedent in a manner that adds an additional element to the legal standard for proving a constitutional violation is 'contrary to' clearly established federal law."). However, because the Court holds that the state court decision was not based on the merits of Villanueva's Sixth Amendment claim, the Court will not decide this issue.

Based on Supreme Court precedent, the Third Circuit has held that to establish a violation of the Sixth Amendment right to compulsory process, the petitioner must show: "First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose."[166]

### a. Villanueva Was Deprived of the Opportunity to Present Evidence in His Favor

It cannot be disputed that Villanueva was deprived of the opportunity to present evidence in his favor. Trial counsel sought to introduce testimony tending to indicate that someone else committed the crime. Nevertheless, the trial judge ruled that:

> I am not going to allow testimony that may lead to a confusion of the issues that can mislead the jury, and is of a different time and place involving a different alleged victim. So as such, I find the evidence to be presented by the mother and the daughter on the issue of alleged sexual misconduct of the alleged victim's brother to not be relevant.[167]

### b. The Excluded Testimony Would Have Been Material and Favorable to Villanueva's Defense

Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact."[168] A "reasonable likelihood" is "a probability sufficient to undermine confidence in the outcome."[169]

Villanueva sought to introduce witnesses suggesting that someone else committed the crime. Specifically, N.E. and her mother would have testified that N.E. lived:

> [W]ith the victim and her family for six months in Allentown, Pennsylvania, just before the victim's family moved to Bethlehem, Pennsylvania, where the abuse in

---

[166] *Mills*, 956 F.2d at 446 (citing *Rock*, 483 U.S. at 56).

[167] Trial Transcript at 47, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[168] *Mills*, 956 F.2d at 446 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 874 (1982)).

[169] *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

this matter occurred. According to the minor-witness's intended testimony, during the time that she lived with the victim's family, the victim's brother sexually abused the minor-witness. Furthermore, the minor-witness intended to testify that she witnessed the brother sexually abuse the victim and the victim's sister.[170]

N.E. would have further testified that A.S. sexually abused her, Ma. S., and Me. S. in the same way that Villanueva was alleged to have done, and that N.E. was able to observe this because the abuse occurred in their shared bedroom in the middle of the night.[171]

This testimony would have been material and favorable to Villanueva's defense in four ways. First, it would have allowed defense counsel to argue that Rivera had a motive to influence Ma. S. and Me. S. to name Villanueva as the perpetrator. The prosecution's case rested on the testimony of the sisters. There was no conclusive medical or scientific evidence showing that Villanueva had sexually abused Ma. S. The defense was based on the proposition that the sisters were influenced by their mother, Rivera, to name Villanueva as the perpetrator, instead of A.S.[172] Villanueva was barred, however, from introducing any evidence showing that A.S. actually committed the sexual abuse, evidence that could have established Rivera's motive to persuade the sisters to blame Villanueva, and not her son.

The defense established that Rivera had the ability to influence the sisters' testimony. Ma. S. testified that at the time the incidents occurred she would hear voices and see things, including seeing people who were not there.[173] Moreover, there was testimony from Charynel Camacho, who had been Rivera's best friend, that Rivera was often physically abusive to the

---

[170] Direct Appeal, slip op. at 3.

[171] Trial Transcript at 29, 50, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[172] *See id.* at 68; Trial Transcript at 4, 128–129, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[173] Trial Transcript at 59–60, Day II, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 14, 2010).

sisters.[174] N.E. also testified that she witnessed Rivera hitting the sisters "a lot for almost anything," including with radio cables, a belt, and her fists, and that the sisters were "afraid" of their mother.[175] The testimony of Ma. S.'s hallucinations allowed trial counsel to argue that she either misidentified the perpetrator or was influenced by her mother into misidentifying the perpetrator. The evidence that Rivera beat her daughters further showed an ability to influence their testimony.

However, to succeed on his theory, Villanueva had to provide a motive for Rivera to influence the sisters to misidentify Villanueva as the perpetrator. To do so, the defense introduced testimony at trial showing that Rivera held a grudge against Villanueva for leaving her and devised the scheme to get revenge. Camacho testified that when Villanueva left Rivera, she heard Rivera say "you go, but I am going to find a way – but I am going to find a way to get you in prison. And I am going to build a case against you."[176] Multiple witnesses also testified that Rivera acted violently towards Villanueva, including Villanueva's mother,[177] Camacho,[178] and Yuizanet.[179] The defense argued that Rivera influenced the sisters' testimony to get revenge on Villanueva for leaving her.[180] The defense, though, was barred from arguing an additional, much stronger motive—that Rivera wanted to protect her son.

Second, not only would this proffered testimony have supported a strong motive for Rivera's alleged conduct, but it also would have allowed defense counsel to provide the jury with

---

[174] Trial Transcript at 26, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[175] Trial Transcript at 94, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[176] Trial Transcript at 29, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[177] Trial Transcript at 73, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[178] Trial Transcript at 29, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[179] Trial Transcript at 112–13, Day III, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 15, 2010).

[180] Trial Transcript at 131, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

an alternative perpetrator. One problem with the defense's theory at trial was that, without the excluded testimony, the defense was limited to arguing that Rivera was able to influence the sisters into fabricating everything in order to "get back" at Villanueva. Although N.E.'s testimony concerned events occurring before the charged conduct, it would have allowed defense counsel to argue a second—and more compelling—theory: that A.S. was the sole abuser, and that the pattern of abuse detailed by N.E. continued after she left the home, making A.S. the actual perpetrator of the charged conduct. Therefore, had the testimony of the sexual assault by A.S. been admitted, in addition to providing a motive to misidentify Villanueva, it would have presented an alternative perpetrator for the jury's consideration.

Third, this testimony would have allowed defense counsel to mitigate the damaging impact of the doctor's testimony. Although the doctor who testified could not conclusively determine that Ma. S. had been sexually abused, the doctor did testify that Ma. S. had notching in her hymenal ring that was consistent with the allegations.[181] In its closing argument, the Commonwealth relied extensively on this medical testimony.[182] The defense was denied the opportunity to argue that A.S.'s actions were responsible for the evidence of sexual abuse. Had the evidence been admitted, the defense would have been able to fully adopt the doctor's testimony as it would have fit with the theory of the case that Ma. S. *was* sexually abused—just not by Villanueva.

Fourth, the evidence would have allowed defense counsel to provide an explanation for Ma. S.'s knowledge of sexual conduct. Ma. S. graphically described sexual conduct, including the allegation that the defendant used a bowl to catch his semen. In closing, the Commonwealth

---

[181] Trial Transcript at 133, 143, Day II, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 14, 2010).

[182] Trial Transcript at 157, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

argued: "You decide. Is capturing semen in a bowl something that a child would make up out of the clear blue sky, or be coached in saying? Or is that something that she really saw with her eyes[.]"[183] For jurors who believed that the "victim's peculiar knowledge of the content" despite her young age provided evidence that she was sexually abused, the admission of evidence that A.S. sexually abused Ma. S. in the same manner as alleged against Villanueva would have served to mitigate the effect of this evidence.[184]

The Court need not determine whether the jury would have returned a not guilty verdict had they heard the excluded testimony. Rather, the Court need only decide whether the exclusion of the testimony was "sufficient to undermine confidence in the outcome."[185] The Court holds that it was. Had the evidence been introduced, a reasonable jury could have found that the pattern of abuse by A.S., detailed by N.E., was the actual source of the abuse alleged by the prosecution, and therefore reasonable doubt existed as to Villanueva's guilt. The testimony to be offered by the excluded witnesses was material and favorable because it supported Villanueva's defense that Rivera influenced Ma. S. and Me. S. into naming him, provided evidence of an alternative perpetrator, neutralized the only medical testimony at trial, and explained Ma. S.'s knowledge of sexual conduct.[186] Therefore, by excluding N.E.'s testimony, the court denied Villanueva "the opportunity to present this potentially exculpatory evidence to the jury."[187]

---

[183] *Id.* at 152–53.

[184] *Commonwealth v. Wall*, 606 A.2d 449, 462 (Pa. 1992) (citation omitted).

[185] *Mills*, 956 F.2d at 446 (quoting *Bagley*, 473 U.S. at 682).

[186] *See id.* at 447 (explaining that evidence is "sufficient to undermine confidence in the outcome" when it "could have served to cast doubt on [the witness's] identification.").

[187] *Id.* at 446 (citing *Lucas*, 500 U.S. at 148–49).

c. <u>The Deprivation of the Excluded Testimony was
Disproportionate to Any Legitimate Evidentiary or Procedural
Purpose</u>

Without analyzing the issue through the lens of the Sixth Amendment, the trial court

excluded the evidence "based upon the relevancy rules of 401 and 403"[188] and the appellate court

ruled that the exclusion was proper based upon Pennsylvania's Rape Shield Law.[189] As these

appear to be the only two possible legitimate evidentiary grounds for denying Villanueva his

right to present witnesses, on this *de novo* review the Court must determine whether excluding

the evidence of A.S.'s sexual abuse was arbitrary or disproportionate to either of these

evidentiary purposes. Although neither the Supreme Court nor the Third Circuit has elaborated

on the precise meaning of "arbitrary or disproportionate," the Seventh Circuit surveyed

precedents from the Supreme Court and the Courts of Appeals and ruled that "to determine

whether a particular evidentiary exclusion is arbitrary or disproportionate to the interests served,

the proper approach is to weigh the defendant's interest in the evidence against the state's

legitimate interests in promoting 'fairness and reliability' in criminal trials."[190]

i. <u>Relevance</u>

As explained above, the evidence was directly relevant to the defense's theory of the case

in that it provided a motive for Rivera to influence the sisters, suggested an alternative

perpetrator, contextualized the doctor's testimony, and explained Ma. S.'s knowledge of sexual

conduct. In fact, Pennsylvania courts have held that evidence of another person committing a

---

[188] Trial Transcript at 13, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

[189] *See* Direct Appeal, slip op. at 6–11.

[190] *Harris v. Thompson*, 698 F.3d 609, 634 (7th Cir. 2012) (citing *Crane*, 476 U.S. at 689–90; *Taylor*, 484 U.S. at 416–18; *Green v. Georgia*, 442 U.S. 95, 97 (1979); *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir. 1994) (en banc); *Ellis v. Mullin*, 326 F.3d 1122, 1128–30 (10th Cir. 2002); *Wood v. Alaska*, 957 F.2d 1544, 1551–54 (9th Cir. 1992); Robert N. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind. L.Rev. 711, 797 (1976)).

"strikingly similar crime . . . is unquestionably relevant for a defendant to show that the crime of which he is accused was committed by someone else."[191] Furthermore, "[w]hen the defense offers evidence that someone other than the defendant committed a crime with a detailed similarity to the one charged, the probative value is . . . strong in showing that the defendant did not commit the crime charged, and . . . there is no prejudice to weigh against this . . . strong probative value."[192] Therefore, because Villanueva had a substantial interest in introducing this evidence and the state relevancy rules did not provide a "legitimate interest in promoting 'fairness and reliability'" for excluding the evidence, the exclusion was arbitrary and disproportionate.[193]

## ii.   Rape Shield Law

Excluding the evidence pursuant to Pennsylvania's Rape Shield Law was also "arbitrary or disproportionate to the purposes [the law is] designed to serve."[194] To the extent it operated to prevent Villanueva from "presenting relevant evidence," the rape shield law "unquestionably implicate[d] the Sixth Amendment."[195] The Supreme Court has therefore "mandated a case-by-case balancing approach for determining whether evidence may be precluded under a rape shield law."[196] Thus, the Court must determine whether, in this particular case—in light of Villanueva's interests in: 1) identifying a motive for Rivera to have influenced Ma. S. and Me. S. to falsely

---

[191] *Commonwealth v. Rini*, 427 A.2d 1385, 1388 (Pa. 1981).

[192] *Id.* Likewise, although the trial judge found that the testimony could mislead the jury, it seems unclear how the jury would have been confused by evidence naming a different perpetrator since this is a defense that juries can reasonably expect.

[193] *Harris*, 698 F.3d at 634 (citing *Crane*, 476 U.S. at 689–90; *Taylor*, 484 U.S. at 416–18; *Green*, 442 U.S. at 97).

[194] *Scheffer*, 523 U.S. at 308.

[195] *Lucas*, 500 U.S. at 149.

[196] *LaJoie v. Thompson*, 217 F.3d 663, 669 (9th Cir. 2000) (citing *Lucas*, 500 U.S. at 153); *see also Harris*, 698 F.3d at 635 ("The Compulsory Process Clause demands more particularized scrutiny of the application of the rule in each case.").

identify him as the perpetrator; 2) naming an alternative perpetrator which would have allowed Villanueva to provide a compelling response to Ma. S. and Me. S.'s detailed testimony about the sexual abuse Ma. S. endured; 3) mitigating the harmful effects of the medical evidence; and 4) explaining the victim's knowledge of sexual conduct—enforcing the Rape Shield Law to exclude the relevant evidence was arbitrary or disproportionate to "the state's legitimate interests in promoting 'fairness and reliability' in criminal trials."[197]

At the time, Pennsylvania's Rape Shield Law provided, in relevant part, that "[e]vidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible . . ."[198]

The Rape Shield Law was passed against the backdrop of the "sad history of our criminal justice system's treatment of complaining rape victims" in which rape victims' "character for chastity or unchastity" was considered to be indicative of whether they were lying about the lack of consent.[199] The Pennsylvania Supreme Court explained that "[i]n an enlightened age a complaining witness's prior consensual sexual activity is simply not relevant to show present consent."[200] "Because there exists no logical correlation between a victim's chastity or promiscuity and the likelihood that the victim was in fact raped, the introduction of such evidence can serve only to confuse or prejudice the factfinding process."[201] Therefore, "[t]he

---

[197] *Harris*, 698 F.3d at 634; *see also LaJoie*, 217 F.3d at 670.

[198] 18 Pa.C.S.A. § 3104 (subsequently amended eff. Aug. 27, 2019).

[199] *Commonwealth v. Majorana*, 470 A.2d 80, 83 (Pa. 1983).

[200] *Id.* at 83–84.

[201] *Wall*, 606 A.2d at 455 (citing *Majorana*, 470 A.2d at 83–84).

purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim."[202]

The state's legitimate interests in promoting fairness and reliability in rape trials by excluding prejudicial and irrelevant evidence about the victim's chastity are not applicable here.[203] Pennsylvania's Rape Shield Law did "not prohibit the admission of evidence regarding a prior sexual assault suffered by the victim."[204] This is because "[e]vidence that [the victim] had been subject to a previous sexual assault would not reflect upon [the victim's] reputation for chastity."[205] Indeed, at Villanueva's trial, the Commonwealth itself argued that: "We don't argue the rape shield because, quite frankly, the rape shield doesn't apply in a case like this because of the fact that the rape shield protects the chastity of the alleged victim. A prior abuse doesn't deal with the chastity of the alleged victim."[206] Therefore, applying the rape shield law to bar the relevant and potentially exculpatory evidence that A.S. had sexually abused Ma. S. was

---

[202] *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. Ct. 2009) (citing *Commonwealth v. Allburn*, 721 A.2d 363, 366 (Pa. Super. Ct. 1998)); *see also A.S.ander v. Shannon*, No. CIV.A. 03-3514, 2005 WL 1213903, at *15 (E.D. Pa. Feb. 2, 2005), *aff'd*, 163 F. App'x 167 (3d Cir. 2006) (citing *Commonwealth v. Killen*, 680 A.2d 851, 853 (Pa. 1996) ("Pennsylvania's Rape Shield Law, at least in theory, prevents rape defendants from transforming trials of themselves into trials of their victims.")).

[203] *See Harris*, 698 F.3d at 634.

[204] *Commonwealth v. Johnson*, 638 A.2d 940, 941 (Pa. 1994). On direct appeal, the state court cited to a Superior Court decision for the proposition that N.E.'s testimony had to be excluded because Pennsylvania's Rape Shield Law barred the admission of evidence of prior sexual abuse. *See* Direct Appeal, slip op. at 9 (citing *Commonwealth v. Johnson*, 566 A.2d 1197, 1202 (Pa. Super. Ct. 1989)). The opinion cited by the state court, though, was the exact opinion that the Pennsylvania Supreme Court reviewed and reversed when it ruled, 18 years before the decision on Villanueva's direct appeal, that Pennsylvania's Rape Shield Law does not apply to evidence of prior sexual abuse. *See Johnson*, 638 A.2d at 941. In 2019, the Pennsylvania legislature amended the rape shield law to exclude evidence of "past sexual victimization" and "allegations of past sexual victimization." 18 Pa.C.S.A. § 3104. However, Villanueva's state proceedings all occurred before the law was amended. Of course, any application of the revised law would still require consideration of the Sixth Amendment and a determination whether the defendant's interest in the evidence outweighs the state's interests in excluding the evidence pursuant to the revised rape shield law. *See Lucas*, 500 U.S. at 149; *see also Harris*, 698 F.3d at 634.

[205] *Id.* at 942.

[206] Trial Transcript at 10, Day IV, *Commonwealth v. Villanueva*, CR-2698/2009 (Sept. 16, 2010).

disproportionate because it did not serve the purposes of the statute or "advance[e] the quest for truth."[207]

In sum, on this *de novo* review of Villanueva's claim, the Court concludes that Villanueva's interest in introducing the evidence far outweighed any state interest in excluding the evidence, under the state rules of evidence, or under the rape shield law, which did not apply in this case.[208] "If the Compulsory Process Clause is to be more than a 'dead letter,' it demands that courts recognize that the exclusion of defense evidence can have constitutional consequences beyond the rules of evidence."[209] Here, the evidence Villanueva sought to introduce was material and favorable and, indeed, essential to his ability to present a complete defense, while the state had a limited, if any, interest in excluding the evidence. Therefore, the exclusion violated Villanueva's right to present a complete defense under the Sixth and Fourteenth Amendments of the Constitution.

### 4. Whether the Error was Harmless

Notwithstanding the Court's determination that the exclusion of the testimony about A.S.'s sexual assaults of Ma. S. violated Villanueva's right to present a complete defense, the Court "must still determine whether those errors can be considered harmless."[210] "The test for

---

[207] *Taylor*, 484 U.S. at 430 (Brennan, J. dissenting). Additionally, even when Pennsylvania's Rape Shield Law applies, Pennsylvania courts have explained that exclusion pursuant to the Rape Shield Law must give way to the Sixth Amendment, after a specific proffer, if: 1) the proffered evidence is relevant to the defense at trial; 2) the proffered evidence is noncumulative of otherwise admissible evidence; and 3) if the evidence is more probative than prejudicial. *See Wall*, 606 A.2d at 457. As explained at length, the evidence Villanueva sought to present satisfies all three factors—the evidence was relevant, there was no other admissible evidence naming A.S. as the perpetrator, and the evidence was extremely probative while the prejudicial value was low because it did not concern Ma. S.'s reputation for chastity. Therefore, even if the rape shield law applied in this case, the state had a minimal interest in applying the rape shield law compared to Villanueva's interest in presenting the relevant evidence.

[208] It is important to note that the Court's analysis of the state rules of relevance and the rape shield law is confined to a determination of the state's interest in enforcing its evidentiary rules in this case. Since this review is *de novo*, the Court is not ruling on the state law issues or essentially reversing the state courts' rulings on state issues.

[209] *Harris*, 698 F.3d at 639 (quoting *Burr*, 25 F.Cas. at 33).

[210] *Rainey*, 658 F. App'x at 152.

whether a federal constitutional error was harmless depends on the procedural posture of the case."[211] The Supreme Court explained in *Brecht v. Abrahamson* that, on habeas review, the proper test is whether, based on the record as a whole, the error "had substantial and injurious effect or influence in determining the jury's verdict."[212]

A "substantial and injurious effect" means "more than a 'reasonable possibility' that the error was harmful."[213] "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win."[214] Furthermore, the Court must judge how the jury would have reacted to the evidence "with allowance for how others might react"[215] and "cannot ask only whether it thinks the petitioner would have been convicted even if the constitutional error had not taken place."[216]

The violation of Villanueva's constitutional rights easily satisfies the *Brecht* "grave doubt" standard for harmlessness.[217] The trial court's error meant that Villanueva was unable to argue that A.S. was the actual perpetrator, explain why he was being falsely identified, provide context for the negative impact of the doctor's testimony, and explain Ma. S.'s knowledge of

---

[211] *Wharton v. Vaughn*, 722 F. App'x 268, 277 (3d Cir. 2018) (quoting *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015)).

[212] 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). The Supreme Court has explained that in § 2254 proceedings the *Brecht* "substantial and injurious effect" standard is the proper standard to apply "in assessing the prejudicial impact of federal constitutional error in a state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 120–21 (2007).

[213] *Ayala*, 135 S. Ct. at 2198 (citing *Brecht*, 507 U.S. at 637).

[214] *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995)).

[215] *Kotteakos*, 328 U.S. at 764.

[216] *Brecht*, 507 U.S. at 642 (Stevens, J., concurring).

[217] *Id.* at 623.

sexual conduct. The Court therefore concludes "that the error substantially influenced the jury's decision."[218] Accordingly, the error was not harmless.

### III.    CONCLUSION

Because Villanueva was denied the right to present the testimony of witnesses critical to his defense, he must be granted a new trial. The Court recognizes that a new trial will impose burdens upon the witnesses, particularly Ma. S. Nonetheless, a conviction that resulted from the denial of a fundamental constitutional right cannot stand.

For all of the foregoing reasons, petitioner Junior Villanueva's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is granted as to claim three. An order conditionally granting the writ will be entered.

**/s/ Cynthia M. Rufe**

---

[218] *O'Neal*, 513 U.S. at 436.